One case on our docket this morning, and we'll go ahead and call that case, 15-60300 United States v. Muhammad. Mr. Cadel, we'll hear from you first. Your honors, and may it please the court, Rashid Muhammad was sentenced to 1,440 months in prison after a trial in which the jury was given an instruction on an indispensable element that contradicted the law. Now, based on the government's briefing, I believe that they concede that this was an error. So the decision before the court is essentially whether or not that error was harmless. Under U.S. v. Nieder, harmless error review applies, but I think that the way that United States Supreme Court discussed that case might give the false impression that most jury instruction errors should be found harmless, and that's not the case, and that's been made clear by this court's review of other jury instruction errors, specifically jury instruction errors in analog prosecutions or prosecutions of controlled substance analogs. For harmless error review, for a jury instruction to survive harmless error review, this court must find, beyond a reasonable doubt, that the jury instruction error did not contribute to the jury's verdict. And both in Nieder and in the Fifth Circuit's discussion of Nieder, it's been made clear that this court is not to act as a second jury and just make a determination based on the evidence offered at trial whether or not the defendant is guilty. Rather, what this court has to determine is whether or not, had the error not occurred, the outcome would have been different. And that review is going to be largely based on the type and magnitude of the jury instruction error and what remedies are, or what remedies might be necessary to render that error harmless. Now in United States v. Nieder, the error was actually, it was very subtle, and it's very distinct from the errors that this court has considered in controlled substance analog cases. In Nieder, the Supreme Court ultimately found that an error was harmless when it involved the omission of an element in the jury instructions given. But the element that was omitted in United States v. Nieder was materiality of a failure to report income to the United States Internal Revenue Service. Materiality in that context was whether or not $5 million was something that essentially mattered. The government really didn't bear any burden of proof on the materiality question because the jury didn't need evidence, and there's no real evidence that could be offered to prove that $5 million was material. The government in Nieder had to prove that the defendant did in fact fail to report $5 million. But whether or not $5 million was material, no rational jury could have found that that amount, $5 million, was not material. Well, counsel, that was certainly Justice Stevens' view in the dissent in Nieder, but we're obviously reading the majority opinion in Nieder that says that these are distinct elements. That is, one is an omission, the other is materiality. Is your view that materiality just isn't necessarily proven by every omission? No. I think what I—I mean to offer a distinction to this court that the error that was found harmless in Nieder was a much more modest error that didn't depend on offering evidence to the jury in order for them to find materiality in that case. Well, I'm reading the court's majority opinion, and they say that was certainly Nieder's view. And Justice Stevens agreed with it. But the Supreme Court of the United States, in the majority opinion, emphatically rejected it. So I'm looking at page 17 of the U.S. reports, and the court says, to rely on overwhelming record evidence of guilt that the jury did not actually consider he contends—that's Nieder contending—would be dispensed with trial by jury and allow judges to direct a guilty verdict on an element of the offense. And then the court goes on to reject that exact argument, which I understand you're repeating today. So it strikes me that we need to start from the proposition that Nieder, just like this case, involves an omitted element from the jury instructions. And then the next question is what to do with it. But I'm not sure how much you get from the idea that materiality wasn't actually an element or that once there's an omission that it's somehow directing a verdict of guilt for us to review it for harmlessness. Thank you, Your Honor. I think that point's well taken out. What I would say is that in Nieder, ultimately, the error was found harmless. But it requires, essentially, the government, in order to prove that an error was harmless, it has to clear a high bar. And in the United States, for example, United States v. Stanford and the United States v. Bays, which I think are the most similar cases that have come before this court on the question of McFadden-style errors in a controlled substance analog case, this court has found that both of those cases involved a reversible error because the jury instruction errors were not harmless. Now, unlike the error in Nieder, the jury instructions in Stanford and Bays and in this case involved a misstatement of the law on an element of the offense. So and I think it's also important to note that in Bays and in this case, the element that was erroneously given to the jury or the statement of the law on the element that was given to the jury is not only a misstatement of the law, it's a contradiction of the law. And that is the jury in Mr. Muhammad's case was told that they do not need to find that Mr. Muhammad knew he was dealing with a controlled substance analog. And that is a direct contradiction of the court's finding in the United States v. McFadden. Now in Bays, the court found that that error was reversible because it essentially prevented the defendant from providing a complete defense. And that's because the jury was never allowed or the jury was instructed not to consider the element of knowledge as it pertained to whether or not he knew that he was dealing with a controlled substance analog. Rather, there was a much lower standard of proof at play in Bays and in this case and in Stanford that suggested that the only essentially the actual jury instructions in Stanford and in Bays are a little bit different, but essentially that the defendant need to know the identity of the substances that he was dealing with. Counsel, if the jury instruction had said, as it did, Mr. Muhammad need not know that the stuff he possessed was an analog, so keep that sentence exactly the way that Judge Ozerden did it in the jury instructions, but then added a new sentence, this is the hypothetical that's not in the jury instruction, the government need only prove that Mr. Muhammad knew that the drugs, I'm sorry, the substances that he possessed had hallucinogenic effects or the various physiological effects and were chemically similar to list controlled substances, that is the two-part requirement of the Analog Act, would that have been sufficient as a jury instruction? It would have been. I really would have been sufficient because the court's made clear in the United States v. McFadden that if the defendant knows the qualities of a substance that make it a controlled substance analog, then that's enough for the person to satisfy the knowledge requirement. Perfect. So it sounds like it's not that the judge affirmatively mis-instructed the jury, it's that he omitted the second sentence that I just offered you. Well, I think it might be fair to characterize that as a, I think it's fair to characterize the jury instruction in this case as a contradiction because to say that the jury need not find that the defendant knew he was dealing with a controlled substance analog is perhaps a more complicated way of saying that he didn't know the nature of the substances that he's dealing with. These sentences are just two different ways of saying essentially the same thing. Perhaps that would not have, perhaps the hypothetical instruction that you suggested would be a better instruction for a lay jury because it's not fair to, I think, a typical person what a controlled substance is without any context provided. Nevertheless, I think in any event, the jury in Faye's and Stanford and in Mr. Muhammad's case were directed to convict the defendant whether or not he satisfied the knowledge requirement. And that creates an issue where the defendants would be convicted without proving beyond a reasonable doubt that each element of the offense had been met. And that seriously, that puts the category of error closer to what the Supreme Court has termed a structural defect that requires reversal. Now, I'm not suggesting that the court needs to overturn meter and say that certain errors definitely are reversible and not harmless. But based on the context of the error, if the error makes it so that the jury, if it follows their instructions, does not consider one of the elements and decide whether or not it's harmless, then they haven't, they're not really convicting the defendant of a crime that is alleged in the indictment. They're convicting him of a crime that is slightly different. And that's why when that happens, the error is not harmless and it needs to be reversed. But don't we have proof in this case, I mean, that the defendant knew these, I mean, knew the properties of these substances, knew what they would do, knew they would produce a high. In other words, building on Judge Oldham's question about prong two of McFadden, don't we have proof in this case that distinguishes this case from, say, Stanford or Bayes? Well, first, I would concede that the government did offer a substantial amount of evidence on that knowledge prong, that, you know, they did elicit those statements. However, by the same, in turn, starting with opening arguments, then proceeding through, you know, then by a government witness, and then ultimately through his own testimony, Mr. McFadden, Mr. Muhammad contested the government's evidence there. So ultimately, whether or not Mr. Muhammad knew the nature of the substances that he  was investigating, it's a credibility determination, except for, in this case, they were not able to make that credibility determination because the question was removed from their profits. So I think it's a mistake for the government to rely, to the extent that they do, on the amount of circumstantial evidence, and I think it's safe to concede that there was evidence provided, and I'm not, you know, if the government is to argue that there was enough evidence for a rational jury to convict Mr. Muhammad on the substance, on the controlled substance analog counts, that's not, all that is to say is that the evidence was sufficient for a jury to convict, but the question is not whether a rational jury could have convicted Mr. Muhammad on the substance abuse, or, excuse me, the controlled substance analogs, but whether or not the jury error contributed to their, to the conviction on those counts. But the standard is, we've got to show, right, that the result would have been different had they been properly instructed, isn't that right? I mean, in other words, doesn't the evidence here completely buttress the knowledge requirement? Your Honor, I don't think it does, because when, I mean, in Stanford, I guess what I'm getting at is that, you know, in my opinion, that they had discussions about how this wasn't covered, or that wasn't covered, or this is how we're legal, and the Attorney General told us it was legal, all those kinds of things. You don't have that here, right? You've got, you've got definitive emails that state what these things are and what they do, and that they substitute for, like, MDMA, I guess, which is clearly a scheduled substance. So, so does the evidence here lead us to a different result? Your Honor, with respect, I think that the distinction between Stanford and Mohammed on the evidence issue is not that, is not significant, because Mr. Mohammed did contest the issue of whether or not he knew he was dealing with controlled substances, beginning with the testimony of Michael Young on cross-examination, counsel for the defendant elicited testimony that Mr. Mohammed was trying not to deal with any controlled substances, or trying to only deal with legal substances. And again, that same, that, a similar statement was elicited from Rosalind Chapman, who was a government witness, and then again, through his own testimony, he said the same thing. Now, the government, with some reason, points to potential contradictions in that, in those statements, but there was definitely introduction of evidence by the defendant, through government witnesses and through his own testimony, that would have allowed a rational jury to say, I believe Mr. Mohammed when he said that, I believe Rosalind Chapman when she said that. And so, it was a question for the jury, whose statements were more credible, whose evidence was stronger? So, I, you know, I think that essentially the same reason holds up from United States versus Stanford, as in this case. Do you see any slippage in the standards that were supposed to apply between Nader and Stanford? Or do you think there is? Well, I think that the Stanford, the Nader decision made it quite difficult for the court to determine what is a reversible error and what is a harmless error, in the context of a jury instruction error, and United States versus Stanford offered, I think, a more comprehensive explanation of how to apply a harmless error review, in the context of a McFadden style error. I think Nader said, to find a harmless error, to find that an error is harmless, we have to be confident that beyond a reasonable doubt, the jury would have reached the same verdict. Well, that statement is from Nader, and also from Nader, there is a statement that the reviewing court cannot act as a second jury and just make its own. Right. So in other words, if reasonable jurors could have reached different results, then we can't say it's harmless. Yes, Your Honor. But, but under Nader, as I understand it, so long as we're confident beyond a reasonable doubt that jurors would have reached the same result, then we can find harmless. That's very different from structural. Well, I think that the Nader court offered statements that this court quoted in Bays to the effect that they, that the reviewing, that a reviewing court should not simply make a redo of the trial, that they should not act as a, they should not act as a second jury. I think that, that was expanded upon in Bays and Stanford, but I don't think it contradicts or overrides. I mean, I, I take your point to be that under Nader, we have to be confident that a reasonable, that a, that a jury would not have reached the same result, and here you've got evidence that he didn't write these emails, that multiple people had access. I see my time has expired, Your Honor. I don't think that this court needs to be confident that the more credible evidence came from the defendant. I think that the court, this court needs to be confident that the jury could not have reached its own rational decision that the defendant's evidence was, was strong. Okay. You've, you've saved three minutes for rebuttal. Yes, Your Honor. Thank you. Mr. Cleveland. Good morning, Your Honors. Gaines Cleveland for the government, and may it please the Court. Turning first to the McFadden harmlessness issue that, uh, Mr. Cato focuses on primarily, there is no evidence in the record before this Court that could rationally lead a jury to reach a contrary finding as to the knowledge element the Supreme Court supplied in McFadden. Had the jury been told of this additional knowledge requirement, the proof readily satisfies the harmlessness standards the Supreme Court recognized in Nader. Just as the remand in McFadden allowed for application of Nader to find harmlessness there, so too this Court should find that the record amply shows that Muhammad had sufficient knowledge to satisfy McFadden. Now, Mr. Cato takes issue with applying the harmlessness standards that was, uh, uh, announced and developed in, in Nader, uh, but this Court has been, uh, applying that standard in a number of cases through the years, and it, the focus is on the strength of the proof as to the missing, the omitted element, going back to the Apprendi cases that this Court is familiar with. The Matthews case, for example, from this, this circuit in, in 2002, and of course, now this Court is having to confront, uh, the Rahaff, uh, issue about the knowledge of the prohibited status of the defendant. Those are elements that the Supreme Court, uh, asked to be applied that were not considered at trial, and this Court is given the task of reviewing the trial record. It's the trial record that, that matters. It's not, uh, some hypothetical record, uh, go back to the, before, uh, Nader, the, the case of Pope against Illinois, the record developed at trial establishes the, the, uh, the, the point that the, the Court is reviewing, uh, Rose versus Clark, you would . . . I assume you'd agree, you cited Rahaff, I assume you'd agree that the knowledge issue in Rahaff is more straightforward than the knowledge, knowledge issue here. It turns out that, that, that it is, yes, Your Honor, that it's, and, and that's really one reason why the Supreme Court and McFadden provide an example in, for the, one to the Court's opinion of the type of evidence that you could use, look to, to provide circumstantial evidence of the defendant's knowledge, and we referred to that, uh, in our, our briefing on . . . So what is your best evidence of knowledge here? Is it the e-mails? Well, the, this, this, this case has a treasure trove, uh, of evidence, there, uh, the websites this defendant, uh, developed and put out there, really on a nationwide basis to solicit business for the controlled substances, analogs and controlled substances. Was there, pardon my ignorance, I understood there was testimony that Mr. Muhammad was not the only person who controlled, at least the e-mails, was there also evidence that he did not have exclusive control over the website? That, that's true. He developed all of the websites, he admits that, and then his, in his own testimony, which I think probably is the best, the best evidence, he himself took the stand and, uh, and basically told, uh, uh, the, uh, the jury in his own testimony, this is record 1301 through, uh, and following, he had admitted actively being involved in researching chemicals. He acknowledged researching the chemical structure of, of the various chemicals in the case. That's record 1337. He examined 3D illustrations that showed similarities and differences of the substances. Uh, he was looking for substances that were just away from, uh, the banned substances. That's record 1307. And asked if the entire process here was to try to get around the drug laws in the United States. Muhammad testified, that's a fair statement. That's record 1344. So I think his own, his own testimony is really what, what, what is the most damning. But counsel, you know, I take your points about the evidence and I actually ask counsel opposite of the same question. But so my question for you and keep coming back in my mind is how do we get around Stanford? And, and here it seems to me that at the very least, uh, we have an affirmative, uh, or at least, uh, uh, a misstatement of what the law is. Now granted the court didn't have the benefit of McFadden and so we didn't know what the two prong test was for proving knowledge. But the court, I mean, you, you could also read as, as counsel opposite said, the, what the court said in the record to the jury as taking the question of knowledge off the table. The, the, the relevant question of knowledge, which is, did he know this was a CSA under the statute? Right? So how, isn't this case stronger than Stanford in terms of a reversal or, or, or like defeating harmlessness of the error? There, there was conflicting evidence in Stanford as well as Bates, uh, about the knowledge. But there wasn't a statement in Bates or Stanford by the court that, that arguably affirmatively misstated the law. The, the Judge Osler then gave the law as it existed at the time. But it was, but it was wrong, right, counsel? I will concede the Supreme Court after the fact developed the knowledge standard. But all that was missing, I mean, the judge asked the jury to decide whether it had, whether the substances involved, the analogs had the chemical structure that was similar to the effect, similar to controlled substances, whether they were represented to be controlled, like controlled substances, whether they were for human consumption. Uh, he required the jury to find that they must know that the, the substance was the named substance, uh, and that the defendant need not know the analog act in order to, to know he was dealing with the controlled substance. Those are all in the pattern instruction that's been developed since McFadden. Now the only thing that was left out was the knowledge that the, the items were controlled as, as McFadden defined them, which is, uh, to know that are listed or to know the characteristics. Which is, which is effectively prong one, so I mean, we're traveling under prong two of McFadden, basically. I, I think that, that, that we're really talking about prong two here, yes, Your Honor. Uh, that is, prong one is that you knew the substance was controlled, prong two, the alternative, and it's relevant here, that the defendant knew the features of the substance, even if the defendant did not know the legal status of it as an analog. So this is just like proof, uh, in ordinary cases, where the defendant is not aware necessarily of the illegality, but he's aware of the facts. That's what, that's what the Supreme Court said. So basically, counsel, can we, the question, I guess, is can we affirm if the district court negated prong one by effectively saying you don't have to prove that he knew it was on the CSA schedule, can we, can we nonetheless affirm under harmlessness analysis under prong two? I mean, is that the crux of the argument? Yes. It's, it's, it's whether this court, as a reviewing court, can go and look at the trial record. That's what all those Supreme Court cases have talked about, the trial record. What is, is there evidence in that trial record that would support the missing element? And that's, that's what we're here for. And you think the trial record here gets us around Stanford, even though Stanford had the special interrogatory that actually captured the essence of the question, it just didn't emphasize it based on the burden of proof. The, the Stanford case did have that, that special instruction, but it, as, as Your Honor points out, did not have the, the burden, the burden of proof. And there are other things that are distinguishable about Stanford, really. It's all about prong one, I think, as Your Honor pointed out. It's all about did, did Stanford know the illegality of this substance? It was only one controlled substance analog at play in, in Stanford. It was something called, a product named Mr. Miyagi, unlike the complete range of products we have here. So our, our defendant here was aware of a wide range of controlled substances, and controlled substances analogs. But then you've got the question that, that Judge Ho asked about as well, which, I mean, my question is going to be, is this fatal to the case? You have testimony, you have proof in the record that, you know, he didn't have exclusive access to this email. He says he didn't send the emails in question. He says he didn't have exclusive access, I thought, to the websites and managing that information. There was a time they diverged. I guess Mr. Young went his way and, and Mr. Muhammad went his. Is that fatal to your, uh, reliance on the proof in the record? There was plenty of evidence of, of Muhammad's involvement himself in these activities. One, the letters that he wrote to Michael Young are, are, are very, very telling. Uh, there was a period when this defendant, Muhammad was in jail for, I think, a counterfeiting charge up in Connecticut, and, uh, he wrote these, these letters to his, to his cousin, uh, about, uh, you know, get a new phone every month, burn every letter I send you. Those are Government Exhibits 48H and 48K. That's an example of concealment of activities that the Supreme Court cited as one of the, the hallmarks of the knowledge that's required. Another is evasive behavior towards law enforcement. Muhammad warned Young, again, in those letters, where the feds were located in nearby towns in Connecticut, and you get a police scanner, that's 48H, uh, uh, and then you have, uh, his own awareness, uh, that the, the, the, these products produce a high, some of the controlled substances. There, there was, uh, uh, one email that, uh, one, one email address that Mr. Muhammad was adamant that was his email address. And there's plenty of email traffic that he's involved, uh, in, in communicating with customers and with Rosalind Chapman, who's a co-conspirator, uh, where it's, it's obviously that he is the one that's involved. You've got, obviously, his, his, uh, uh, products were going to Gulfport, uh, Mississippi, uh, with Rosalind Chapman having been arrested in nearby Ocean Springs. Those products were sent to, uh, from, uh, from, uh, R. Muhammad in, uh, in Connecticut, in the Connecticut return address. So he is, he was the source, and you can't really get away from that. Maybe there were other people involved in the conspiracy and the conduct, but he himself was centrally involved. So, uh, we really, uh, you're, you're exactly right, we're talking about, uh, the, the second aspect of, uh, the Supreme Court's, uh, uh, sort of definition of knowledge in McFadden. Uh, you've got him ordering chemicals from China that were going to addresses associated with Muhammad in Connecticut, uh, using email addresses that were associated with him. Uh, he would refer to the subject, the, the chemicals by name, and of course we had, uh, the evidence at trial in the form of, of the forensic evidence that the, the chemicals were exactly the same as the ones that, that he, that he identified. So, uh, there was ample evidence. Uh, there's this notion of, of, that Mr. Cannell mentions, uh, that, uh, of course it's a mistake, he says it's a mistake to rely on circumstantial evidence. Well, that's contrary to what the Supreme Court said, uh, that this Court can rely on in determining, uh, the heartlessness and whether he had, uh, knowledge. Now, uh, in addition to the circumstantial evidence, we have, you know, direct evidence in the form of, of the physical evidence that I'm referring to, as well as his own testimony. Before I get too far, I do want to mention, uh, just in passing, uh, Your Honors, that I, uh, I provided the Court with a, uh, a corrected, uh, uh, table three to our main brief. I, I had put forward the argument that you could take out the analogs and the result would be the same. Uh, in, uh, in preparing for argument, I found a mistake in table three as to the AM2201, uh, substance, uh, and that's, uh, explained in footnote two, I correct the table that I provided in the Court. The result would be, if you were to take out the analogs, the, uh, the total would be reduced, reduced by one level. So it would be an offense level of 42 instead of a 43. So that would be a 360 months to, to life, uh, instead of a life. But ultimately, our position is there, there was no, uh, there's no merit to the sentencing claim, there's merit to the underlying claim, so no reduction is required, but I did want to highlight that, uh, in passing. There's this notion that, uh, uh, in, in, in Stanford, let me mention this as well, that, uh, uh, that, that's not true here. That, uh, Stanford said that if I, uh, had known, uh, about this difference in the instructions, I would have put on a different defense. Now, Mr. Ahmed says that, but Mr. Stanford said, if I had known, I would have called a forensic chemist. He identifies the evidence he would have provided that would have been different. There is absolutely nothing from the defense that, that, that goes to the second prong that the Supreme Court set forth as a basis for knowledge in McFadden. The defense took the stand here, he, uh, there's, there's something, nothing in, in the record that goes to that. This is not a question of, uh, uh, if I had known, uh, X, I would have done Y, uh, this is if I had known X, I would have done, and just, there's, there's, there's not, there's a blank that's not filled in. They simply don't give any indication how they could have gone around that, around that, uh, uh, that, around that, around that knowledge, aspect of the knowledge. So, uh, he's pointed to no defense, let alone a complete defense. But counsel, was that dispositive in Stanford? I mean, that, that was a different section of the opinion, and it was almost like an alternative reason for reversing. So address the first part of Stanford that, that just goes squarely to the burden of proof and the, the special interrogatory that, that wasn't, I guess, you know, closely enough coupled with the jury instructions about the elements. I think Judge Ho asked a question I thought was kind of interesting about the, there might be some, some slippage between Nader and Stanford, and that, that may be where there's some slippage, because Nader doesn't really allow you to go outside the record. The, and all, the whole line of cases that Nader's based on talk about, the, the appellate court looks at the record, the record of the trial, and it's not a question of what if, you've got a question of what ifs, you really get off into a, a fantasy land. Now, Stanford was a little bit more down to earth, because they said, well, if we didn't know, if we'd known X, we would have done Y. The Y, they pointed to, was calling forensic chemists. They had something specific in mind. So, but you're right, that is, was a sort of an alternative basis for, for that decision. I think that's factually distinct, distinguished because the, the evidence was really muddled in that case. You had Stanford, I guess, was a lawyer for this, this entity that was developing this Mr. Miyagi product, and he was sort of on the periphery of the business. He lacked the intimate knowledge that Mr. Bahamut has, and obviously, I've indicated we're talking about a range of products in this case versus a single product in that case, and he, there's a question of whether he was even, even present for a crucial meeting in that case where the, that he came in late, and there were sort of competing facts about that. This is not as to the second form of the Supreme Court's decision in McFadden, even, there's not even an issue here on that. It's simply not a controverted set of facts. Stanford trusted the people in his, that case, and it's, it's, it's entirely a, a distinguishable. All right, unless the Court has any further questions, we, let's go to our brief. Thank you, Mr. Cleveland. Mr. Cadell, you have three minutes. Your Honor, it's, Your Honors, it's clear that the government doesn't believe the testimony from the defendant in a trial, and I understand the reason for that, but the government is essentially asking you to serve as a second jury here, and you know, I want, I would like to quote very briefly from. Actually, I thought the government was saying that the defendant essentially admitted to knowledge in various ways. Well, that's, I, yeah, the government, the government characterizes Mr. Muhammad's statements as an admission. I don't think that's accurate, and I would point to certain other areas of the record. For example, Mr. Muhammad's testimony at page 1,416, and again at 1443, he makes it clear that his intention, at all times, was to stay on the right side of the law and not to sell any illegal drugs. Now there are other statements that make that ambiguous, could make a reasonable jury believe otherwise. But if the jury credits the statements that Mr. Muhammad made, and it's their right to do so, if they could rationally have believed Mr. Muhammad at that point, that's reasonable doubt on knowledge, and that means that it could not have convicted on those counts. And again, Rosalind Chapman's cross-examination at page 974, Michael Young's cross-examination at page 1306, these all contain statements that suggest that Mr. Muhammad did not know that he was dealing with a controlled substance analog. Why would someone who's a legitimate businessman instruct his cousin to get a new phone every month, burn every letter, get a police scanner, know the feds are in Hartford and Stanford or wherever else they are in Connecticut, instruct him specifically about how to avoid detection, discreet packaging, only buy from places in China, I mean, his own words, take all the emails out, ignore everything sent from the DAGA Fire account, just look at his own words at trial about trying to be as close as possible to the line, and his own words to his cousin and his letters to Young. What legitimate businessman does that? As Mr. Muhammad said himself in response to a similar line of questions was that he felt he was being harassed by the police and that he knew, based on his previous record, that the police would be investigating him and trying to arrest him. So he... For what? He felt... Mr. Muhammad's... Now, whether or not this is a rational belief, he felt he was being persecuted, so it makes sense for him to take steps to be less visible to the government in his business. Now, again, if a rational jury could have said, you know, I believe that Mr. Muhammad felt this way and thought this way, or at least I think it's possible. Well, Counsel, what about the point we talked about with Counsel Opposite that, I mean, going to what the court said to the jury about knowledge, in other words, can't we affirm on the second prong of McFadden, which, you know, let's just, let's stipulate for the moment that it's met by the evidence, in other words, it's inherent in the proof that he knew what the properties were and all that sort of thing, he can meet prong two. Is it sufficient to defeat the harmlessness of the error to say that, well, the court affirmatively got it wrong on prong one, but didn't really get it wrong on prong two? Your Honor, I think the error was not harmless, even given that stipulation, because it did affect his preparation and presentation of his defense. Well, why can't we affirm, though, based on the evidence that really substantiates prong two as opposed to prong one? Your Honor, I assume my time is the last minute. Please. Thank you. If Mr. Muhammad didn't, if Mr. Muhammad lacked the knowledge that was required under McFadden, that's a defense. He didn't have the opportunity to present that defense because it was foreclosed by the jury instructions. So, I don't think that, I think that his, had the jury accepted the offenses that he could have presented. Well, didn't he defend, though, effectively defend by offering evidence regarding all the elements that we're talking about as far as prong two? I don't think that he was able to effectively defend those because he knew at the time that the jury, that the judge was likely not to accept the jury instructions that were consistent with McFadden that he was arguing for. At the charging conference, and I have a citation to the record for that, at page 1,504, counsel for defense says, this affected our defense, we wanted to do something different, but was not able to because that, even if they had proven those elements or convinced the jury, they had been instructed to essentially disregard the knowledge element of the controlled substance analog offenses. Do, going back to the Stanford versus Nader legal standard issue, I assume you agree that if we were to find a conflict between the two standards that were governed by the Supreme Court standard? That would clarify? I'm sorry, Your Honor, I didn't hear. Yeah. I take your point that one clarifies the other and there's no conflict. I take that argument. But just hypothetically, if we were to have a circuit precedent that conflicted with prior Supreme Court precedent, we're obviously governed by the Supreme Court precedent. Yes, Your Honor, I would concede that. And I think that this court can apply the standard as it was presented in the United States versus Stanford without harming the harmless error standard that was promulgated by the Supreme Court. Okay. One last question. I think you, if I heard you correctly, you just said that at the end of the day, none of this matters because your client didn't have the chance to litigate with the proper standard in place. That sounds like structural error. That would always be true. So, I don't think that a jury instruction by itself, a jury instruction error by itself means that there is a structural, a structural problem with the, with the trial. However, a jury instruction error can be so severe that it creates a structural error. And I think that's the case in, in Mr. Muhammad's trial because he was not allowed, or he was not given the opportunity to present a lack of knowledge defense on the actual element of the crime. Okay, but just to be clear, that would always be true in an admitted jury instruction case? I think that in the, there's a broad category of jury instruction errors, which is subject to harmless error review and are not automatically reversible, and there's a smaller category within jury instruction errors that are not, that are not omissions or not incomplete statements of the law, but actual contradictions of the law as, as occurred here. And, you know, if, I don't think it's necessary to carve out a standard for jury instruction errors that contain a contradiction of the law, but if there were, then that would be an automatically reversible error in my, based on my understanding of, of, of Nieder. Can I, one, one quick one. Is there any distinction between the jury instruction given in McFadden and the jury instruction given here? Yes, Your Honor. So, the jury was instructed in McFadden that the defendant need only know that he possessed a substance that was in fact an analog, whereas in this case, the jury was instructed that the defendant needed to know the, the names or identities of the substances that he was not necessarily, they were controlled substance analogs. I understood that the district court in the charge conference, when discussing how to instruct the jury in this case, obviously didn't have the benefit of the Supreme Court's opinion in McFadden, but did have the Fourth Circuit's opinion in McFadden and followed the Fourth Circuit's opinion in McFadden. Yes. So, I'm not seeing the distinction between the jury instructions. I don't think there was a, I think the distinction is literally in just the, the order of the words being presented. I don't think that there's a substantive difference.  Hypothetically, sorry, one last question. Hypothetically, if it were truly undisputed that on retrial, not this case, hypothetically, on retrial, the reasonable jury would reach the same results, I take it we would not reverse in that case? If I may alter the hypothetical very slightly. Please. I think if in a separate case it were stipulated that all the same arguments and all the same evidence would be presented, then there would be no difference. If there was a point in allowing a retrial, that would, there would be a harmless error because neither side is going to offer . . . That's the difference between structural and harmless. Yeah. And, and I don't think that that would happen here. I, I believe Mr. Mahamoud would be able to, would definitely try to develop . . . No, I, it's truly hypothetical. I'm just trying to figure out what the legal standard is. All right. Thank you. Thank you. Thank you, Your Honors. Thank you.